Filed 10/12/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VERIO HEALTHCARE, INC., et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF ORANGE COUNTY, <br><br> Respondent; <br><br> SG HOMECARE, INC., et al., <br><br> Real Parties in Interest. | G053068 <br><br> (Super. Ct. No. 30-2015-00819810) <br><br> O P I N I O N |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Sheila Fell, Judge.  Petition denied.

Buchalter Nemer and Donald P. Wagner for Petitioners.

No appearance for Respondent.

Rutan & Tucker, Richard K Howell, Gerard M. Mooney and Kathryn D. Z. Domin for Real Parties in Interest.

Defendants Eric Schrier, Frank Frederick, and Angela Martinez had been employed in various capacities by plaintiff SG Homecare, Inc. (SG Homecare), before abruptly leaving to start a competing firm, defendant Verio Healthcare, Inc. (Verio). SG Homecare filed the underlying complaint, alleging the individual defendants breached their contractual and fiduciary duties, and misappropriated trade secrets. Schrier and his wife cross-complained against SG Homecare and its owner, Thomas Randall Rowley (together, the "SG parties"), alleging wrongful termination and intentional infliction of emotional distress.

Defendant Verio Healthcare and the individual defendants are represented by Donald Wagner of the firm Buchalter Nemer, PLC. Shortly after the cross-complaint was filed, the SG Parties moved to disqualify Buchalter Nemer. The motion was based on the assertion that shortly before the individual defendants' departure from SG Homecare, Buchalter Nemer executed a retainer agreement with SG Homecare and was either currently representing SG Homecare, or, alternatively, the present litigation is substantially related to Buchalter Nemer's prior representation of SG Homecare, requiring disqualification in either event.

At around the same time, defendants moved ex parte for a nine month continuance of the entire litigation on the ground that defendants' attorney, Donald Wagner, is a member of the California State Assembly.[1] Under sections 595 and 1054.1

___

[1] Hereafter, we will refer to defendants' motion as a motion for a nine-month stay of the entire litigation, not a simple continuance motion, because the continuance requested by defendants encompassed "the trial and *all* pre-trial proceedings in this matter to a date that is more than thirty days beyond the final adjournment of the Legislature for the 2015-2016 session." (Italics added.) Their motion concluded by arguing that "proceedings in this case, including any discovery, the filing of any motions or pre-trial documents, and trial itself must be held in abeyance under [Code of Civil Procedure] sections 595 and 1054.1 until, at the earliest . . . October 1, 2016."

2

of the Code of Civil Procedure,[2] attorneys who are members of the state Legislature are entitled to a continuance and an extension of time respectively unless the continuance or extension would defeat or abridge the other party's right to provisional or pendente lite relief. The SG Parties opposed the motion, inter alia, on the ground that in *Thurmond v. Superior Court* (1967) 66 Cal.2d 836 (*Thurmond*) our high court interpreted a prior version of sections 595 and 1054.1 as merely directory; to interpret the statutes as mandatory would have violated the separation of powers between the Legislature and the Judiciary. (*Id*. at pp. 838-840.) The court denied the motion for a nine-month stay of the litigation without explaining the basis of its ruling.

Defendants petitioned this court for a writ of mandate ordering the trial court to grant the stay. We summarily denied the petition, but the California Supreme Court granted review and remanded to our court with instructions to issue an order to show cause. We issued an order to show cause, entertained argument, and now deny the requested writ for two reasons.

First, the court acted within its discretion by impliedly concluding the requested stay would "abridge a right . . . to invoke a provisional remedy" (§ 595), an express exception to the legislative directive making mandatory the granting of a continuance.

Second. although the 1968 amendment of sections 595 and 1054.1 purports to make a legislator-attorney's request for a continuance mandatory — unless it would defeat or abridge a right to provisional relief — the amendment did not cure the constitutional deficiency identified by the *Thurmond* court if applied literally as a mandatory directive to the trial courts in other circumstances, such as staying discovery. Like the *Thurmond* court, we are not persuaded the Legislature intended to intrude on the right of the courts "to control [their] order of business and to so conduct the same that the

_____

[2] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

rights of all suitors before them may be safeguarded.  This power has been recognized as judicial in its nature, and as a necessary appendage to a court organized to enforce rights and redress wrongs.'"  (*Lorraine v. McComb* (1934) 220 Cal. 753, 757.)  Accordingly, we hold that sections 595 and 1054.1, despite the 1968 amendment of those sections, remain directory in nature, and that the statutes "are to be applied subject to the discretion of the court as to whether or not its process and order of business should be delayed." (*Thurmond*, *supra*, 66 Cal.2d at pp. 839-840.)

ALLEGED FACTS

*SG Homecare's First Amended Complaint*

According to SG Homecare's operative first amended complaint, SG Homecare is a medical supply and delivery company providing equipment to patients, physicians, health plans, and others.  Rowley owns SG Homecare.

Schrier was a longtime personal friend of Rowley's.  In October 2014, Schrier said he was experiencing financial difficulties, so Rowley offered to employ him at a starting salary of $420,000.  Schrier had no prior experience in the medical supply industry.  Schrier's employment contract stated, among other things, that he would not engage in any activity to compete with SG Homecare while employed there.  Schrier also agreed not to use or disclose SG Homecare's trade secrets, and not to solicit SG Homecare's customers or employees for a period of one year after leaving SG Homecare's employ.

Martinez was SG Homecare's director of operations, and in that capacity she obtained knowledge of SG Homecare's confidential information, including methods of operation, finances, customer relationships, and employees.  In early 2015, Martinez admitted to embezzling over $62,000 from SG Homecare, but Schrier convinced Rowley not to fire her, claiming Martinez's services were needed to run the business.

4

Frederick was a consultant Schrier hired who worked out of SG Homecare's Costa Mesa office and who acted as a representative of SG Homecare to procure and maintain relationships with current and potential clients. In that capacity he also obtained knowledge of confidential information, such as methods of operation, marketing, customer relationships, and employees.

While working at SG Homecare, unbeknownst to Rowley, the individual defendants were conspiring to form a competing firm, Verio Healthcare. Frederick incorporated Verio Healthcare on September 15, 2015, at which time the individual defendants were still employed by SG Homecare. On October 16, 2015, the individual defendants abruptly resigned from SG Homecare to work at Verio Healthcare.

After the individual defendants' departure, SG Homecare discovered they had deleted numerous electronic files, including most of their e-mails, and had removed various physical documents, including documents regarding SG Homecare's negotiations with potential clients. SG Homecare immediately demanded the return of these documents, but the defendants denied taking or destroying any documents.

SG Homecare also discovered that defendants were pursuing relationships and contracts with current and potential customers of SG Homecare, including Molina Healthcare, with whom Frederick and Schrier had been negotiating on behalf of SG Homecare. Those negotiations had proceeded to the point where Molina Healthcare and SG Homecare had exchanged contract documentation. SG Homecare alleged such a contract would have generated "several millions of dollars of profits annually."

On November 20, 2015, SG Homecare filed a first amended complaint against Verio Healthcare and the individual defendants, asserting causes of action for breach of fiduciary duty, breach of contract, conversion, violation of Penal Code section 502 (unauthorized computer access),[3] violation of Penal Code section 496 (receipt of

_____

[3] Penal Code section 502, subdivision (e)(1) permits a civil action to recover expenses related to investigating the unauthorized computer access.

stolen property), trade secret misappropriation, intentional interference with prospective economic advantage, unfair competition (Bus. & Prof. Code, § 17200), and an accounting.

On December 24, 2015, defendants answered the first amended complaint, denying the allegations, and defendant Schrier and his wife filed a cross-complaint against Rowley for wrongful termination (constructive termination) and intentional infliction of emotional distress. Donald Wagner was the signing attorney on both documents.[4] Both documents listed one other attorney who, based on her bar number, appears to be an associate at the firm.

*The Schriers' Cross-Complaint*

According to the Schriers' cross-complaint, Rowley and Schrier had known each other for 12 years, having met at a golf club. Beginning in January 2013, over a period of nine months Rowley attempted to recruit Schrier to work at SG Homecare. It was not until October 2014 that Schrier left his position in the print advertising industry and joined SG Homecare as its president.[5] Over the next 10 months, Schrier doubled SG Homecare's monthly revenue.

"Unfortunately, . . . Schrier began to see a very dark side of . . . Rowley." Rowley exhibited an explosive temper and was regularly intoxicated with alcohol and various drugs. Rowley ordered SG Homecare employees to purchase marijuana for Rowley using company funds. Rowley routinely made disparaging remarks to

---

[4] On July 1, 2016 we filed an order advising the parties we intended to augment the record to include the answer to the complaint. No opposition was filed. On the court's own motion, we augment the record to include the answer.

[5] Given this timeline, the allegation that Rowley began recruiting Schrier in January 2013 may be a typographical error, as January *2014* would fit more comfortably with the allegation that Rowley recruited Schrier over a nine-month period.

employees. For example, in business meetings Rowley would refer to Schrier as a "Jew Boy President" or "Jew President."

Rowley had informed Schrier that SG Homecare was licensed to provide goods and services under Medicare and Medi-Cal in Orange County. This was false, and SG Homecare was benefiting from business that required such a license. Schrier discovered the falsehood and warned Rowley that this conduct was illegal, but Rowley did not remedy the problem.

After spending his first eight months on the job focusing on marketing and improving operations, Schrier turned his attention to SG Homecare's finances. He discovered Rowley was using the company as his personal "Piggy Bank." He was using company money to fund his drug habit and a lavish lifestyle, including making rental and mortgage payments on properties, auto payments for his girlfriend and adult children, and funding vacations in Hawaii and Mexico. To gain a tax advantage, Rowley falsely listed these expenses as company expenses. Schrier voiced his opposition to this practice and warned Rowley that the company would suffer in an audit, but Rowley ignored the warning. Schrier also discovered a major inaccuracy on SG Homecare's tax records, which Rowley attempted to cover up by improperly recategorizing certain expenses without paying the additional taxes that would be owed.

In confronting Rowley about these various unethical and illegal practices, "Rowley repeatedly promised that he would 'indemnify' . . . Schrier for any damage caused by fraudulent activities. . . . Rowley went so far as to even offer to have his attorneys draft an indemnity agreement . . . ." "However, . . . Schrier was uncomfortable proceeding as an employee of [SG Homecare], despite the offer of an 'indemnity agreement.'"

"Being constantly pressured to engage in fraudulent business activities and under the stress and pressure of being harassed for his religious and ethnic background, . . . Schrier believed that he had no alternative but to leave his position as president of [SG Homecare]."

In response, Rowley went into a fit of rage and left several profanity-laced, racist tirades on the voicemails of Schrier and his wife, threatening repeatedly to sue them and their five children. "Cross complainants were legitimately fearful for the[ir] lives and the lives of their children." As a result, the Schriers called the Orange County Sheriff's Department. A deputy responded, and while the deputy was present, Rowley called again. The deputy answered, and Rowley "unleashed a profanity-laced tirade" at the deputy. The Schriers then hired an armed private investigator for their own safety, and obtained a temporary restraining order.

*Competing Motions for Disqualification of Counsel and a Stay of all Proceedings*

Less than two weeks after the cross-complaint was filed, on January 4, 2016, defendants moved the court for a continuance of the trial and all pretrial matters (in effect, a stay of all proceedings) based on the fact that their attorney, Donald Wagner, is a member of the Legislature, and thus entitled to a continuance. According to Wagner's declaration, the Legislature reconvened from its interim recess on January 4, 2016, and was scheduled to adjourn for more than 40 days on August 31, 2016. Wagner stated, "Because of the press of legislative business in the 2016 session, I am occupied in Sacramento and unable to participate in pre-trial proceedings or otherwise prepare for trial." The motion sought a continuance to a date on or after October 1, 2016. The hearing on the motion was set for February 3, 2016.

The next day, defendants *withdrew* the motion on the ground that "[g]ranting of a continuance under Code of Civil Procedure Section 595 is mandatory, and no hearing is required."

Two days later, on January 7, 2016, there were three filings in quick succession. At 10:28 a.m., SG Homecare and Rowley filed a motion to disqualify Buchalter Nemer on the ground that the firm had recently represented SG Homecare in a substantially related matter. The hearing date was set for April 6, 2016. At 10:48 a.m., defendants filed an ex parte application to continue all proceedings on the same basis as their previous motion. In response, that afternoon, SG Homecare and Rowley filed an ex parte application to have the motion to disqualify heard the following day, or at the same time as the motion for a continuance. The following day, SG Homecare and Rowley filed an opposition to defendants' motion for a continuance on the ground, inter alia, that they were entitled to a preliminary injunction in this case.

The motion to disqualify, supported by Rowley's declaration, alleged many of the same facts recited in the first amended complaint. In addition, it alleged that in June or July 2015, Rowley happened upon a meeting in SG Homecare's office between Schrier and attorneys from Buchalter Nemer, including Michael Caspino. When Rowley asked Schrier why he was meeting with attorneys from Buchalter Nemer when SG Homecare had previously used different attorneys, Schrier said Buchalter Nemer was better and would be serving as SG Homecare's attorneys going forward.

After the individual defendants departed SG Homecare, Rowley discovered various documents pertaining to Buchalter Nemer's representation. In an e-mail dated June 3, 2015, Caspino stated that he and Julie Simer, another attorney at Buchalter Nemer, had recently toured SG Homecare's offices. The e-mail attached an engagement agreement. Schrier's calendar indicated that he met with Caspino for two hours on June 5, 2015. Schrier met with Caspino again on June 17, 2015, where Caspino introduced Schrier to Dan Starck, the CEO of Apria Healthcare, which is a competitor of SG Homecare. Caspino had previously indicated he could make this introduction without Rowley's knowledge.

9

On July 16, 2015, Schrier's assistant sent Caspino a fully executed engagement agreement between Buchalter Nemer and SG Homecare. Buchalter Nemer agreed to represent SG Homecare in connection with "general business matters."

In an August 6, 2015, e-mail exchange between Schrier and Attorney Simer, Schrier sent Simer a contract between SG Homecare and a client and discussed the amount of fees for her to review the contract. Rowley attested that the terms of such client contracts are confidential information, and that by sending Buchalter Nemer this contract, Buchalter Nemer gained access to confidential information. On September 8, 2015, Simer e-mailed Schrier asking if he would like Buchalter Nemer to review the contract.

On September 15, 2015 (the same day Verio Healthcare was incorporated), Caspino wrote to Schrier to "confirm that [Buchalter Nemer] will no longer act as counsel for SG Homecare . . . ." It went on to say, "Although we executed an engagement letter, our firm did not perform any services for SG Homecare."

*The Hearing on the Motions and the Subsequent Writ Petition*

Both ex parte motions were heard in chambers on January 8, 2016, and both were denied without explanation by the court. There was no reporter present in chambers, but according to the present writ petition, the court denied the stay request on the ground that another attorney at Buchalter Nemer could handle the case in Wagner's absence.

Defendants filed a petition for a writ of mandate in our court. We summarily denied the petition. Defendants sought review in the California Supreme Court, which granted review, issued an order staying the litigation, and transferred the matter back to our court to issue an order to show cause. We complied.

10

DISCUSSION

*Although Technically Moot, We Decide This Case on the Merits Because the Issue May Otherwise Escape Appellate Review*

We begin by addressing mootness. According to Wagner's declaration, the Legislature would be in session through August 31, 2016, and thus he sought a continuance through October 1, 2016. By the time this opinion is final, it will be beyond October 1, 2016. Since the California Supreme Court stayed the litigation, defendants have obtained the stay they sought through the appellate process. Nonetheless, we exercise our discretion to address the merits in this case because this issue is likely to occur in other cases where the appellate process may otherwise preclude meaningful review. (*Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 122 ["when, as here, an otherwise moot case presents important issues that are 'capable of repetition, yet evading review' [citations], we may resolve the issues"].)

*Background: The* Thurmond *Decision and the Amendment of Sections 595 and 1054.1*

Currently, section 595 provides, in relevant part, "The trial of any civil action, or proceeding in a court, . . . or the hearing of any motion, demurrer, or other proceeding, shall be postponed to a date certain when it appears to the court . . . that . . . any attorney of record therein . . . is a Member of the Legislature of this state and that the Legislature is in session . . . . When the Legislature is in session . . . such action or proceeding shall not, without the consent of the attorney of record therein, be brought on for trial or hearing before the expiration of thirty (30) days next following final adjournment of the Legislature or the commencement of a recess of more than forty (40) days." "Granting of a continuance pursuant to this section is mandatory unless the court determines that such continuance would defeat or abridge a right to relief pendente lite in a paternity action or a right to invoke a provisional remedy such as pendente lite support

11

in a domestic relations controversy, attachment and sale of perishable goods, receivership of a failing business, and temporary restraining order or preliminary injunction, and that the continuance should not be granted."[6]

The latter sentence of section 595, and similar language for extensions of time in section 1054.1, subdivision (b), was enacted in response to our high court's seminal decision in *Thurmond*, *supra*, 66 Cal.2d 836. *Thurmond* arose from a paternity action in which a guardian ad litem for an unborn child sought pendente lite support from the alleged father to cover medical expenses incident to the pregnancy and birth. (*Id.* at p. 837.) The alleged father was represented by an assemblyman who sought a three month continuance under sections 595 and 1054.1, which the court granted over the guardian ad litem's contention that the mother's expenses could not be postponed. (*Id.* at pp. 838-839.)

The *Thurmond* court issued a writ reversing the trial court's decision. "We are persuaded that the statutory provisions upon which Thurmond relies should be viewed as directory only." (*Thurmond*, *supra*, 66 Cal.2d at pp. 838-839.) "'One of the powers which has always been recognized as inherent in courts, which are protected in their existence, their powers and jurisdiction by constitutional provisions, has been the right to control its order of business and to so conduct the same that the rights of all suitors before them may be safeguarded. This power has been recognized as judicial in its nature, and as being a necessary appendage to a court organized to enforce rights and redress wrongs.'" (*Id.* at p. 839.) Interpreting sections 595 and 1054.1 as mandatory would impair important rights in "cases in which a party has a right to invoke a provisional remedy, such as pendente lite support in domestic relations controversies, attachment and sale of perishable goods, receivership of a failing business, and temporary restraining

---

[6] Section 1054.1, under which defendants also moved, provides for similar relief to members of the Legislature, except that it applies to extensions of time for any "act [that] relates to the pleadings in the action."

12

orders or preliminary injunctions. [Citation.] Situations other than those involving provisional remedies may also arise in which a substantial existing right would be defeated or abridged by extended continuances." (*Thurmond*, at p. 839.) "We are convinced that such a result, with the serious constitutional questions which would ensue, was not intended by the Legislature, and that the statutory provisions here involved are to be applied subject to the discretion of the court as to whether or not its process and order of business should be delayed. Especially is this true in the light of the 1966 amendment to the Constitution of this state, pursuant to which the Legislature may meet in extended annual regular sessions." (*Id.* at pp. 839-840, fn. omitted.)

"Among the factors to be considered by the court will be the nature and urgency of the rights involved [citation], whether the party seeking delay has or can secure other counsel to represent him for the particular step in the proceedings then before the court, and whether the attorney who is a member of the Legislature was employed for no other purpose than attempted delay. [Citations.] The legislative policy of granting continuances of court proceedings so as not to interfere unduly with the functions of the Legislature, reflected in section 595, has been in the law since 1880 and should be given full force and effect wherever and whenever it may be done without unduly adversely affecting the rights of others." (*Thurmond*, *supra*, 66 Cal.2d at p. 840, fns. omitted.)

*Thurmond* was decided in 1967. In 1968, the Legislature amended section 595 to add the following provision: "Granting of a continuance pursuant to this section is mandatory unless the court determines that such continuance would defeat or abridge a right to relief pendente lite in a paternity action or a right to invoke a provisional remedy such as pendente lite support in a domestic relations controversy, attachment and sale of perishable goods, receivership of a failing business, and temporary restraining order or preliminary injunction, and that the continuance should not be granted." (Stats. 1968, ch.

13

698, p. 1396, § 1.)  A similar provision was added as subdivision (b) of section 1054.1. (Stats. 1968, ch. 698, p. 1397, § 2.)

*The Court Did Not Abuse Its Discretion*

We conclude the court did not abuse its discretion in denying defendants the requested extended stay of this matter for two reasons:  (1) The court acted within its discretion by impliedly concluding the requested stay would "abridge a right . . . to *invoke* a provisional remedy" (§ 595, italics added), and (2) the 1968 amendment of sections 595 and 1054.1 did not cure the constitutional deficiencies identified by the *Thurmond* court if the statute is interpreted as mandatory, rather than directory.

1. *An Exception to the Mandatory Stay Language of Sections 595 and 1054.1, Subdivision (b) Applies to this Case*

As a preliminary matter, we note the absence of a record of what transpired in chambers where the court considered the ex parte motions.  We do have a brief statement in a declaration from Wagner, submitted with the writ petition, that the court relied on the fact that Buchalter Nemer has other attorneys who can handle the matter. We also have a brief statement in a declaration from Gerard Mooney, attorney for real parties, submitted in real parties' return to the writ petition, stating the court relied on the right to invoke provisional relief as well as the pending disqualification motion.  A silent record has consequences.  "A judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.  This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 355, p. 409.)  Thus, in the absence of a record of the discussion in chambers, we must presume the order of the

14

court is correct, and that the court has made, expressly or impliedly, all findings necessary to support its order.

The court's implied reliance on the potential that SG Homecare would seek a preliminary injunction, and the pending motion for disqualification of counsel, was entirely proper and sufficient under section 595 to justify denial of the stay. Section 595 gives the court discretion to determine whether the requested stay would *abridge a right to invoke* a *provisional remedy*. It does not say the provisional remedy must already have been invoked. Here, plaintiffs presented allegations that defendants stole valuable trade secrets and were currently using those secrets to compete with real parties. The operative first amended complaint alleges an entitlement to preliminary and permanent injunctive relief as remedies for the alleged trade secret misappropriation and unfair competition under Business and Professions Code section 17200. In cases such as these, it is common that plaintiffs would invoke the provisional remedy of a preliminary injunction. And as plaintiffs' counsel suggested at oral argument, some discovery may be necessary before filing such a motion. A stay would effectively abridge the right to invoke provisional relief by denying discovery, thereby preventing the filing of a preliminary injunction motion.[7]

The pending disqualification motion was also a form of provisional relief that plaintiffs had already invoked. In *Meehan v. Hopps* (1955) 45 Cal.2d 213, 215, our high court held that a motion to disqualify counsel is appealable as an order "'refusing to grant or dissolve an injunction.'" (See also *Reed v. Superior Court* (2001) 92 Cal.App.4th 448, 453 [citing *Meehan* for the proposition "that an order denying

---

[7] During oral argument, defendants' counsel suggested the court could issue a limited stay that excluded provisional relief from its scope. We offer no opinion on whether the text of sections 595 and 1054.1, subdivision (b), would support such a request, and deem it sufficient to note that defendants did not seek a stay with such limitations. Quite the contrary. Defendant's motion sought to shut the entire case down for nine months.

disqualification of counsel is an order denying an injunction"].)  Further, in *Benasra v. Mitchell Silberberg & Knupp* (2002) 96 Cal.App.4th 96, 110, the court held an order on a disqualification motion is in the nature of a *preliminary* injunction rather than a permanent injunction.  At oral argument, defendants responded that while an order on a disqualification motion may be in the *nature* of a preliminary injunction, it is not actually one.  But section 595 is not so narrow:  It permits denial of a stay where the stay would abridge the right to invoke provisional relief "such as" a preliminary injunction.  Thus, on the face of the statute, denial of a stay was within the court's discretion.

### 2. *The 1968 Amendments of Sections 595 and 1054.1 Suffer the Same Constitutional Defect Identified in* Thurmond

As noted, defendants' motion was not limited to a request to continue a specific hearing.  It sought to stay the entire litigation, without limiting the broad request to matters not exempted from the mandatory language of sections 595 and 1054.1.  For that reason, we must also address the reach of these statutes in other contexts.

The 1968 amendment of sections 595 and 1054.1 did not cure the constitutional deficiencies identified in *Thurmond*.  While the amendment directly incorporated a portion of what the *Thurmond* court found problematic about the statute, it left out this portion of the *Thurmond* opinion:  "Situations other than those involving provisional remedies may also arise in which a substantial existing right would be defeated or abridged by extended continuances."  (*Thurmond, supra*, 66 Cal.2d at p. 839.)

Unless sections 595 and 1054.1, subdivision (b) are interpreted as directory, they continue to infringe on the independence of the judiciary.  Our analysis is guided by the high court's analysis in *People v. Engram* (2010) 50 Cal.4th 1131 (*Engram*).  *Engram* arose from the dismissal of a criminal case due to a large backlog of cases and severe shortage of resources in the underlying superior court.  (*Id.* at p. 1136.)  The superior court had devoted most, but not all, judges and courtrooms to conduct criminal trials.  But

16

the district attorney, appealing from the dismissal, argued its efforts were not enough —
that the superior court was obligated under Penal Code section 1050 to devote *every*
courtroom and judge to conduct criminal trials. (*Id.* at p. 1137.) In relevant part, Penal
Code section 1050 states, "It is therefore recognized that the people, the defendant, and
the victims and other witnesses have the right to an expeditious disposition, and to that
end it shall be the duty of all courts and judicial officers and of all counsel, both for the
prosecution and the defense, to expedite these proceedings to the greatest degree that is
consistent with the ends of justice. In accordance with this policy, criminal cases shall be
given precedence over, and set for trial and heard without regard to the pendency of, any
civil matters or proceedings."

The *Engram* court analyzed whether this directive violated the
independence of the judiciary. Two competing principles were at play: first, the
judiciary's inherent constitutional authority "'to control the disposition of the causes on
its docket with economy of time and effort for itself, for counsel, and for litigants'"
(*Engram*, *supra*, 50 Cal.4th at p. 1146), second, "'[t]he power of the legislature to
regulate criminal and civil proceedings and appeals . . . .'" (*Id.* at p. 1147.) "'[T]he sum
total of this matter is that the legislature may put reasonable restrictions upon
constitutional functions of the courts provided they do not defeat or materially impair the
exercise of those functions.'" (*Ibid.*)

The *Engram* court looked to precedent to determine what constitutes a
material impairment of the court's inherent functions. The court began with *Lorraine v.
McComb* (1934) 220 Cal. 753 (*Lorraine*), which concerned a statute providing that "'[i]n
all cases, the court shall postpone a trial . . . for a period not to exceed thirty days, when
all attorneys of record . . . agree in writing to such postponement.'" (*Engram*, 50 Cal.4th
at p. 1147.) The *Lorraine* court had reasoned that if this were interpreted as an inflexible
mandate, "the constitutionality of the statute would be questionable." (*Engram*, at p.
1148.) It thus interpreted the statute as merely directory. (*Lorraine*, at p. 757.) The

17

*Thurmond* court likewise relied on *Lorraine* in its analysis of sections 595 and 1054.1 (*Thurmond*, *supra*, 66 Cal.2d at pp. 838-839), and the *Engram* court went on to discuss *Thurmond* at length. (*Engram*, at p. 1149.)

The *Engram* court ultimately decided Penal Code section 1050 was saved from the constitutional issues identified in *Lorraine* and *Thurmond* because of one important qualification. Section 1050 urges criminal cases to be given priority "consistent with the ends of justice." (*Engram*, *supra*, 50 Cal.4th at pp. 1150-1151.) "Because the statute explicitly recognizes a court's fundamental and overriding obligation to administer the proceedings that are pending before it in a manner that is consistent with the ends of justice, past decisions have recognized that the provision cannot properly be interpreted as establishing an absolute or inflexible rule mandating such precedence under all circumstances or in total abrogation of a trial court's ultimate control or discretion over the order in which the cases pending before it should be considered." (*Id.* at p. 1151.)

The statutes before us contain no such qualification. To the contrary, with certain exceptions, sections 595 and 1054.1 explicitly describe the continuance or extension of time as "mandatory." And as we noted above, the exceptions are directed entirely toward provisional relief and fail to account for our high court's conclusion that a mandatory lengthy stay may hamper a court's fundamental mandate even outside the context of provisional relief. We conclude, therefore, that sections 595 and 1054.1 are unconstitutional to the extent they purport to be mandatory, and should continue to be treated as directory, subject to a trial court's discretion as set forth in *Thurmond*.

3. *Application to this Case*

Turning to the court's ruling here, we conclude the court acted within its discretion in denying the stay. *Thurmond* identified three nonexclusive factors to guide a court's discretion: (1) "the nature and urgency of the rights involved," (2) "whether the

18

party seeking delay has or can secure other counsel to represent him for the particular step in the proceedings then before the court," and (3) "whether the attorney who is a member of the Legislature was employed for no other purpose than attempted delay." (*Thurmond*, *supra*, 66 Cal.2d at p. 840.)

Regarding the first factor, SG Homecare's complaint alleges an ongoing harm — a competing business utilizing its confidential information to steal customers. If SG Homecare has a righteous claim, the longer the lawsuit goes on, the more damage will be done, which may not be fully compensable with a damages award, particularly if some customers are permanently lost.

Regarding the second factor, defendants offered no reason why another attorney from Buchalter Nemer could not handle the matter at this early stage in the proceedings. The record reveals at least three attorneys from Buchalter Nemer who have appeared on defendants' behalf, and it is common knowledge that Buchalter Nemer is a large firm that enjoys a good reputation.

Regarding the third factor, we are not aware of evidence that Donald Wagner was brought into the case merely as a tactic to secure a continuance. The first two factors, however, are sufficient to support the court's exercise of its discretion in denying the stay.

DISPOSITION

The petition for a writ of mandate is denied. Having served its purpose, the order to show cause is discharged. In the interests of justice, this decision is final as to this court 10 days after the filing of this opinion. (Cal. Rules of Ct., rule 8.490(b)(2(A).) The stay issued by the California Supreme Court was to last "[p]ending further order of the Court of Appeal." We order the stay lifted upon the finality of this decision as to this

19

court.  SG Homecare and Thomas Randall Rowley are entitled to recover their costs in this writ proceeding.


IKOLA, J.

WE CONCUR:


ARONSON, ACTING P. J.


FYBEL, J.