342 A.2d 616.

LINDA LEMOINE *et al. vs.* PAUL MARTINEAU *et al.*
STATE *vs.* EDWARD F. CHOINIERE.

JULY 29, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

234

KELLEHER, J. We have issued our writ of certiorari in each of the above cases and consolidated them for hearing. The single issue before us is whether the provisions of G. L. 1956 (1968 Reenactment) §22-4-3 constitute an unconstitutional encroachment on Rhode Island's judicial system by the General Assembly. We hold that they do.

In essence §22-4-3 provides that during the time the

Legislature is in session its members, whether they be litigants, counsel of record, or witnesses, need not appear at the trial of any civil or criminal action then being held in the courts of this state, and that any process served upon the absentee legislator to compel his or her appearance in court is void.

Having cited the pertinent statute, we shall briefly set forth the factual background of each of the cases now before us.

Lemoine seeks damages for personal injuries she sustained as a result of a May 1970 automobile collision. The incident involved two vehicles. Lemoine was a passenger in one of the vehicles. Both drivers have sued each other, and the passenger in the other automobile has sued the driver of the vehicle in which Lemoine was a passenger. In June 1972 all the respective claims were consolidated and assigned to the continuous jury trial calendar. Lemoine's attorneys are members of a Providence law firm. On January 31, 1973, a member of the firm entered his appearance in her behalf. As time progressed, the cases moved up the calendar until they had reached the "No. 1 ready" position. On February 18, 1975, one of Lemoine's attorneys, who had been elected to the House of Representatives in the November 1974 election, asked that the assignment judge continue the cases until such time as the January 1975 session of the General Assembly had adjourned. In making this request, counsel estimated that the trial would take about 5 or 6 days and he could not "afford to lose that much time from the General Assembly meetings." The assignment justice in denying the request ruled that §22-4-3 was unconstitutional. He did, however, offer to continue the cases to any day within the next 2 weeks that was most convenient for Lemoine's counsel. The legislator suggested a week's continuance, but when it was discovered that the defense

counsel might not be available at that time, the cases were continued 1 month to March 18. Subsequently, on March 17, Lemoine, through her counsel, sought certiorari. We stayed the Superior Court proceedings and issued the writ on March 24.[1]

Choiniere is an attorney who has been charged in three separate indictments with embezzling over $13,000 belonging to his clients. The indictments were returned in early March 1974. Subsequently, in April 1974, his counsel filed a series of discovery motions all of which were denied in part and granted in part. Appropriate orders were entered on April 23, 1974.

Almost a year later, in February 1975, the State furnished the necessary information. At this point in time Choiniere's counsel was a member of the House of Representatives, having been elected to that office during the November 1974 general election. On February 14, 1975, counsel received a 21-day notice.[2] A month later he was sent a notice informing him that the indictments would be called for trial on March 20, 1975. On March 20, 1975, Choiniere's counsel appeared before the trial justice to

_____

[1] While ordinarily we will refrain from deciding questions where events have rendered the legal issues moot, our issuance of certiorari in these proceedings is motivated by the fact that these petitions relate to a matter of great public importance which is capable of repetition and yet evading review. *School Committee* v. *Westerly School Teachers' Ass'n,* 111 R. I. 588, 305 A.2d 93 (1973); *Chernov Enterprises, Inc.* v. *Scuncio,* 107 R. I. 439, 268 A.2d 424 (1970).

[2] The 21-day notice is sent by the Attorney General's department to counsel of record. It informs defense counsel that the case to which it refers will be called for trial in approximately 21 days. It asks that if the matter can be disposed of by way of a plea or if defense counsel for some valid reason is not ready to proceed, such information should be given to the assistant Attorney General whose name appears on the notice. Lack of any subsequent contact, it states, will give rise to the assumption that a trial is in order.

whom the indictments had been assigned. Counsel first sought a continuance on three grounds: (1) he was not adequately prepared to present a defense because of his misunderstanding as to when his case could actually be ready for trial; (2) pressing legislative duties that demanded his presence in the General Assembly; and (3) his desire to try another case that was ready for trial on the civil calendar.

The trial justice, after listening to counsel's argument, rejected each contention made. The discovery information, he said, had been provided to the defense 5 weeks ago. The trial justice assured counsel that arrangements could be made so that his pending civil cases would be kept in a ready position and they could be tried as soon as the pending indictments had been tried. In referring to counsel's concern about his absence from the Legislature, the trial justice observed that in his years on the criminal calendar, he had never experienced any difficulty in receiving the cooperation of members of the Legislature whose specialty is the practice of criminal law. The exchange of views between defense counsel and the court continued to the point where counsel stated: "I must exercise formally for the record my privilege under Section 22-4-3." The trial justice answered that as far as he was concerned the case was ready to begin and defense counsel gave an affirmative reply when asked if his client would be present in the courtroom later that day so that the impanelling of a jury might begin. A recess was taken. The recess developed into a continuance until the following day. On March 21, defense counsel informed the trial court that he had sought certiorari in this court. We issued the writ and stayed the Superior Court proceedings.

Article III of the Rhode Island Constitution provides that "The powers of the government shall be distributed into three departments: the legislative, executive and

judicial." Since the adoption of our state's constitution in 1842, it has been a well established and accepted principle that the General Assembly cannot rightfully exercise judicial power. That power is conferred only upon the courts and is necessarily prohibited to the Legislature. *State* v. *Garnetto,* 75 R. I. 86, 63 A.2d 777 (1949); *Taylor* v. *Place,* 4 R. I. 324 (1856); *Opinion of the Justices,* 3 R. I. 299 (1854). Chief Justice Ames in *Taylor* v. *Place, supra,* defined the exercise of judicial power as the *control* of a decision in a case or the *interference* with its progress, or the *alteration* of the decision once made. It is an elemental rule of law that the denial of a motion for continuance is a matter which rests in the sound judicial discretion of the court to whom the application is made. *Kishfy* v. *Kishfy,* 104 R. I. 61, 241 A.2d 827 (1968); *Williams* v. *Altruda,* 74 R. I. 47, 58 A.2d 562 (1948); *Wolfe* v. *Wolfe,* 104 A. 689 (R.I. 1918). A continuance properly given is an authorized interference with the progress of a decision to be made in a pending controversy.

A glance at §22-4-3 shows that it is blatantly unconstitutional. By its terms the courts have no discretion to act. The power of decision rests with each member of the Legislature. Under the statute the lawyer-legislator can pick and choose. At any given time, he can exercise his statutory privilege in one courtroom and then proceed to another courtroom where he can participate to the fullest in the trial of another proceeding. With impunity the lawyer-legislator can disappear from the courtroom scene on the first day of the legislative session and reappear once the sesison has adjourned.

What has been said about the lawyer-legislator applies equally well to a legislator who may appear in court in the role of a litigant or a witness. The statute affords to a legislator a privilege which no other individual enjoys and at the same time gives a hollow ring to our Constitu-

tion's mandate that "[e]very person within this state * * * ought to obtain right and justice * * * promptly and without delay; conformably to the laws." R. I. Const. art. I, §5. While one of the purposes of this constitutional mandate was to prevent the sovereign from selling justice by the imposing of fees on the litigants,[3] its command that justice be dispensed in a prompt and expeditious manner takes on added significance when one considers the thrust of §22-4-3.

This statute transfers control of the judicial dockets from the court to the whim and caprice of the legislator who is due in court as an attorney,[3] a litigant, or a witness. One part of judicial power is the inherent right of the judicial system to control the order of its business. Recently in *Tate v. Howard*, 110 R. I. 641, 296 A.2d 19 (1972), we said that once criminal process issued, the Attorney General's power to conduct the prosecution was subject to the judiciary's right and power to provide for an orderly system of criminal justice so that an accused's right to due process and a speedy trial could be protected. The observations made in *Tate* are equally applicable to the Legislature's attempted immunization of its members, given art. I, §5's edict that any person having recourse to the legal processes shall be afforded the opportunity of having the wrong he sustained remedied promptly and without delay.

A look at the length of recent legislative sessions demonstrates the true potential for harm that is engendered by the enactment of §22-4-3. The 1975 session of the General Assembly began on January 7 and adjourned on May 15—a 4-month interval. The 1974 session also encompassed a January to May time span. In 1971 the legislators reported for duty in January and did not com-

---

[3]*Narragansett Elec. Lighting Co. v. Sabre*, 50 R. I. 288, 146 A. 777 (1929).

plete their legislative duties until the following July. During any of these or similar intervals, the rights of litigants could be destroyed or materially impaired by the interposition of the statute. What of the mother who seeks support for herself and her children if her spouse or his attorney is a legislator? The crisis facing the mother also occurs where a business is failing and a receiver needs to be appointed. A myriad of circumstances can arise where substantial rights of other litigants who have no association whatever with the General Assembly would be extinguished or diminished.

There is no need to discuss any further the infirmities of §22-4-3. We are constrained to fault it on two constitutional grounds: (1) it is an unauthorized legislative encroachment on the judiciary's right and obligation to run its affairs in a manner that is fair and equitable to all litigants, and (2) the statute flies in the face of the constitutional command found in art. I, §5.

The position we have taken here is in accord with the sentiments expressed by most courts that have considered the constitutional validity of statutes similar to our §22-4-3. *City* v. *Valdez Dev. Co.*, 506 P.2d 1239 (Alas. 1973); *McConnell* v. *State*, 227 Ark. 988, 302 S.W.2d 805 (1947); *A.B.C. Business Forms* v. *Spaet*, 201 So.2d 890 (Fla. 1967); *Johnson* v. *Theodoron*, 324 Ill. 543, 155 N.E. 481 (1927); *Booze* v. *District Court*, 365 P.2d 589 (Okla. Crim. 1961); *Granai* v. *Witters, Longmoore, Akley & Brown*, 123 Vt. 468, 194 A.2d 391 (1963). Another court in seeking to preserve the constitutionality of such a statute has recognized that if read literally, the statute amounts to a legislative usurpation of a judicial function, but to avoid this constitutional conflict the court construed the statutory "shall" as a "may" so that the court's discretion remains unfettered. *Thurmond* v. *Superior Court*, 66 Cal.2d 836, 427 P.2d 985, 59 Cal. Rptr. 273

(1967). However, "shall," we have said, usually connotes compulsion. *Warren Educ. Ass'n v. Lapan,* 103 R. I. 163, 235 A.2d 866 (1967). We have no doubt that when the General Assembly sought to free its members from appearing in court during the time the legislative machinery was in operation, it used the word "shall" and intended that "shall" be construed as "shall" and not as "may."

The only court of last resort that has upheld the constitutionality of a statute requiring a compulsory continuance for lawyer-legislators is the Texas Supreme Court. The case is *Government Services Ins. Underwriters v. Jones,* 368 S.W.2d 560 (Tex. 1963). The court in taking the position that it did remarked that there was an "* * * underlying divergence of view as to legislative authority over the subject of continuances from the constitutional standpoint." The contrary view expressed by the court in *Jones* is apparently based on the fact that the Texas constitution specifically limited the judiciary's authority to promulgate the rules of procedure. The *Jones* case gave rise to some adverse criticism. 42 Texas L. Rev. 391 (1964). Thereafter the statute was amended so that the right to a continuance is now a matter for the court's discretion. *See DeVries v. Taylor,* 505 S.W.2d 780 (Tex. 1973).

Before concluding, we would offer a brief comment on Lemoine's contention that §22-4-3 is but a reaffirmation of art. IV, §5 of our state's constitution. In pertinent part this article exempts a legislator from arrest and his property from attachment for 2 days before a session begins, while the General Assembly is in session, and for 2 days following its termination. Section 22-4-3 does not speak of immunizing a legislator from arrest during the session. Rather, by legislative fiat it purports to grant an exemption to a legislator in which no questions are asked as to why he or she is unable or unwilling to appear at a trial.

No one is seeking to arrest. the litigant, witness, or attorney who happens to be a legislator. All that the judiciary requires is that the legislator, who wishes to be excused, explain to the justice who has charge of the particular litigation the reason which makes it impossible for the legislator to be present. The trial justices, we are sure, will make every effort to accommodate the needs of their colleagues in state government. A great deal of flexibility can be had as to when testimony shall be taken. In nonjury trials particularly, hearings can be staggered during the day so that the respective needs of both the legislative and the judicial branches of government can be satisfied.

This court has great respect for those who serve their fellow citizens by choosing to become members of the General Assembly. We have within recent weeks acknowledged the contribution the legislators make to the common good as a group of "overworked and grossly underpaid" public servants. *Whitman* v. *Mott,* 114 R. I. 530, 336 A.2d 836 (1975). Like other courts who have considered statutes comparable to our §22-4-3, we are quite conscious of the great impact that the orderly conduct of legislative affairs has upon our state. Proper consideration must be given by the members of the judiciary to the fact that a litigant, attorney, or a witness who is a member of the Legislature is required to attend to his or her legislative duties at certain times of the year. We find it hard to believe that a trial justice would abuse his or her discretionary power by requiring the attendance of members of the General Assembly under circumstances where their duties in the Legislature were more pressing. A good-faith request for a continuance based on the necessity to be in attendance at the legislative session should not be denied arbitrarily or capriciously. In the event a trial court abuses its power to grant a continuance, the leg-

islator in question may have immediate recourse to this court by way of certiorari and in a suitable situation a stay may be sought pursuant to our Rule 8.

In each case the petition for certiorari is denied. The writ heretofore issued is quashed, and the papers are remanded to the Superior Court with our decision endorsed thereon.

*Robert M. Brennan,* for Linda Lemoine; *Richard Bruce Feinstein,* for Linda Lemoine; *J. Joseph Nugent, Jr.,* for Edward F. Choiniere, petitioners. *Joseph M. Hall,* R. I. Bar Ass'n, Amicus Curiae, *Jeremy W. Howe,* R. I. Bar Ass'n, Amicus Curiae.

*Joseph V. Cavanaugh,* for Paul Martineau; *James M. Micali,* for Paul Martineau; *Julius C. Michaelson,* Attorney General, *William G. Brody,* Special Asst. Attorney General, for respondents. *George M. Vetter, Jr.,* R. I. Bar Ass'n, Amicus Curiae.