# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE
NEWS RELEASE #049

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **25th day of October, 2024** are as follows:

**BY Hughes, J.:**

*2024-CD-00359*     *THERESA FISHER  VS.  STEVEN HARTER, JR., ET AL. (Parish of Caddo)*

REVERSED; REMANDED WITH INSTRUCTIONS. SEE OPINION.

Weimer, C.J., additionally concurs and assigns reasons.
McCallum, J., dissents and assigns reasons.

# SUPREME COURT OF LOUISIANA

## No. 2024-CD-00359

## THERESA FISHER

## VERSUS

## STEVEN HARTER, JR., ET AL.

On Supervisory Writ to the 1st Judicial District Court,
Parish of Caddo

**HUGHES, J.***

At issue in this case is the constitutionality of La. R.S. 13:4163, which grants "peremptory grounds" to members of the legislature or to legislative employees to obtain continuances or extensions of fixed court dates or deadlines when the presence, participation, or involvement of the member or employee is required in any capacity, surrounding legislative sessions, constitutional conventions, and related activities. The plaintiff in this case contested the constitutionality of La. R.S. 13:4163, in response to multiple uses of the statute, by defense counsel (two of whom are also state legislators), to upset fixed court dates. The district court upheld the constitutionality of La. R.S. 13:4163, and the appellate court declined the plaintiff's application for supervisory review. For the following reasons, we reverse the district court's denial of the plaintiff's motion for declaratory judgment, we declare La. R.S. 13:4163 unconstitutional on its face, and we remand the matter to the district court with instructions to conduct a contradictory hearing in accordance with La. C.C.P. art. 1605, as to all contested motions for continuance.

---

*Justice Jeannette Theriot Knoll, retired, appointed Justice Pro Tempore, sitting for the vacancy in Louisiana Supreme Court District 3.

## FACTS AND PROCEDURAL HISTORY

This action arises out of an automobile accident, which occurred on June 2, 2018, in which the vehicle driven by the plaintiff, Theresa Fisher, was allegedly rear-ended by the vehicle driven by defendant, Steven Harter, Jr., pushing the plaintiff's vehicle into the vehicle preceding hers. Because this defendant was a minor at the time of the accident, his father, Steven Harter, Sr., was joined as a defendant.

A motion for partial summary judgment was rendered by the district court on September 8, 2020, which held that: Steven Harter, Jr.'s negligence or fault was a legal cause of the June 2, 2018 accident; Steven Harter, Sr. was vicariously liable for the negligence or fault of his then-minor son, who subsequently attained the age of majority and the procedural capacity to be sued as an adult; Hanover Insurance Group provided two policies of insurance (automobile and umbrella policies) providing liability coverage to both Harters (in the coverage amounts of $250,000/$500,000/$100,000 and $2,000,000, respectively); the defendants failed to carry their burden to prove that the plaintiff, Theresa Fisher, was at fault in causing the accident, therefore, their affirmative defense of comparative fault was dismissed with prejudice; and the defendants failed to carry their burden to prove that any third party was at fault in causing the accident, therefore, their affirmative defense of third party fault was dismissed with prejudice. **Fisher v. Harter**, No. 615,908 (2020 WL 13866928) (La. Dist. Ct. 9/4/20) (unpublished). Other allegations in the motion for partial summary judgment were deferred, relating to: the plaintiff's entitlement to recover medical expenses paid by Medicaid or Medicare; mitigation of damages; and the Louisiana Balance Billing Act. **Id**. The plaintiff stated in her writ application to this court that only the issues of causation of damages and the extent of damages remain for trial.

During the course of the district court proceedings, defense counsel Alan Seabaugh (a state senator) and Michael Melerine (a state representative), both

2

members of the State Legislature for 2024 through 2028, sought and were granted continuances of various fixed court dates under La. R.S. 13:4163 ("A member of the legislature and a legislative employee shall have peremptory grounds for continuance … of any type of proceeding and the extension of any type of deadline pertaining to a criminal case, civil case, or administrative proceeding, if the presence, participation, or involvement of a member or employee is required in any capacity, including any pretrial or post-trial legal proceeding….") (quoted in full hereinbelow). Paragraph (E)(2) of La. R.S. 13:4163 requires that "[w]ithin seventy-two hours of the filing of a motion for a legislative continuance or extension, *the court* or agency *shall grant the continuance* or extension *ex parte*…." (Emphasis added.)

A motion seeking a declaratory judgment of the unconstitutionality of La. R.S. 13:4163, under various provisions of the Louisiana Constitution and the United States Constitution, was filed by the plaintiff and opposed by the defendants and by the Louisiana Attorney General. The trial court denied the motion and provided written reasons, stating in pertinent part as follows:

1. Louisiana statutes are presumed constitutional and the party challenging a statute must show clearly and convincingly that it was the constitutional aim to deny the legislature the power to act. Specifically, the moving party must rely upon a constitutional provision that restricts the legislature's authority to enact *La. R.S. 13:4163*. Plaintiff fails to clearly and convincingly show any constitutional aim or provision which restricts the legislature from enacting *La. R.S. 13:4163*.
2. *La. R.S. 13:4163* does not violate the separation of powers by usurping the judiciary's constitutional authority, nor deny any party's access to courts, nor deprive any party of a vested property right, but simply grants a temporary time-limited continuance to legislative members and staff of court proceedings during the legislative session.
3. The affiliation of attorney/client representation is not a basis of discrimination under the Louisiana Constitution or United States Constitution.
4. Plaintiff fails to show the temporary delay deprives her of any fundamental right, under the Louisiana Constitution or United States Constitution. Therefore, she must show *La. R.S. 13:4163* does not have a rational relationship to a legitimate governmental

3

interest. She fails to do so. *La. R.S. 13:4163* has a rational basis and accomplishes a legitimate governmental interest: allowing legislators and staff time to focus on their jobs in the Louisiana Legislature during session.

The plaintiff's application for supervisory review to the appellate court was denied. **Fisher v. Harter**, 55,853 (La. App. 2 Cir. 4/19/24) (unpublished). This court granted the plaintiff's application. **Fisher v. Harter**, 24-00359 (La. 6/25/24), 386 So.3d 1077.

In this court, the plaintiff assigns as error the district court's failure "to declare La. R.S. 13 4163 and its non-discretionary, peremptory continuance unconstitutional on its face and as applied to the facts of this case, in violation of La. Const. art. 2, §2 (Separation of Powers), La. Const. art. 1 §3 (Individual Dignity/Equal Protection), La. Const. art. 1, §22 (Access to Courts), and La. Const. art. 1, §2 (Due Process), and our federal constitutional guarantees of due process and equal protection under the Fifth and Fourteenth Amendments to the U.S. Constitution." In support of this assignment of error, the plaintiff argues that since "the mandatory, non-discretionary language grants these legislators the right to unilaterally decide to continue 'any type of proceeding' or to extend 'any type of deadline' anytime either one of them is 'engaged in activities, including travel, in connection with the legislature' there is simply no guarantee when or if this case will ever be tried." The plaintiff also asserts that "the discretion lies exclusively with these legislators to decide whether the matter should be continued or extended, [and] our courts are unequivocally prohibited from doing anything to manage their dockets or otherwise move this case and other such cases expeditiously to trial," which is "to the detriment of the opposing party's constitutional rights." The plaintiff further contends that La. R.S. 13:4163 "robs" the court of the ability to make determinations as to the appropriateness of such a continuance or extension and "makes the legislator both factfinder and ultimate adjudicator."

4

## LAW AND ANALYSIS

Thus framed, the predominant issue before this court is whether La. R.S. 13:4163 is unconstitutional, facially or as applied to the facts of this case.

Review of a judgment determining the constitutionality of a statute presents a question of law and is reviewed *de novo*, without deference to the conclusions of the lower courts. **Kinnett v. Kinnett**, 23-00060, pp. 3-4 (La. 6/27/23), 366 So.3d 25, 27, <u>cert. denied sub nom.</u> **Andrews v. Kinnett**, ___ U.S. ___, 144 S.Ct. 493, 217 L.Ed.2d 258 (2023); **State in Interest of D.T.**, 19-01445, p. 3 (La. 4/3/20), 340 So.3d 745, 748; **Louisiana Federation of Teachers v. State**, 13-0120, p. 21 (La. 5/7/13), 118 So.3d 1033, 1048. As a general rule, a statute is presumed to be constitutional, and the party challenging the validity of a statute has the burden of proving its unconstitutionality. **Kinnett**, 23-00060 at p. 4, 366 So.3d at 27; **Faulk v. Union Pacific Railroad Co.**, 14-1598, p. 7 (La. 6/30/15), 172 So.3d 1034, 1042; **Louisiana Federation of Teachers**, 13-0120 at p. 21, 118 So.3d at 1048.

In the instant case, the plaintiff essentially argues that the power granted by La. R.S. 13:4163 to legislators and other legislative personnel to obtain continuances or extensions of fixed court dates on a peremptory basis is a usurpation of the judicial powers of the court and is therefore an unconstitutional violation of the separation of powers doctrine. The plaintiff further asserts that defense counsel in this case (who are also members of the legislature) have used the power granted to them under La. R.S. 13:4163 to delay this lawsuit, thereby depriving the plaintiff of her day in court.

"The powers of government of the state are divided into three separate branches: legislative, executive, and judicial." La. Const. Art. 5, § 1. "Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." La. Const. Art. 2, § 2. <u>See also</u> **Watson Memorial Spiritual Temple of Christ v.**

5

**Korban**, 24-00055, p. 10 (La. 6/28/24), 387 So.3d 499, 507; **Crooks v. State Through Department of Natural Resources**, 22-00625, p. 2 (La. 1/1/23), 359 So.3d 448, 450; **Hoag v. State**, 04-0857, p. 4 (La. 12/1/04), 889 So.2d 1019, 1022. See also La. Const. Art. 5, § 1 ("The judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this Article.").

The trichotomous branching of our governmental authority furnishes the basis for the existence of an inherent judicial power, which the legislative and executive branches cannot abridge. **Jazz Casino Co. v. Bridges**, 16-1663, p. 4 (La. 5/3/17), 223 So.3d 488, 492; **Hoag**, 04-0857 at p. 4, 889 So.2d at 1022; **Singer Hutner Levine Seeman & Stuart v. Louisiana State Bar Association**, 378 So.2d 423, 426 (La. 1979). Under the doctrine of inherent powers, courts have the power to do all things reasonably necessary for the exercise of their functions as courts. The inherent powers of the judicial branch necessarily encompass the authority to administer the business of the courts. **Safety Net for Abused Persons v. Segura**, 96-1978, p. 4 (La. 4/8/97), 692 So.2d 1038, 1041; **Konrad v. Jefferson Parish Council**, 520 So.2d 393, 397 (La. 1988).

The power at issue in the instant case is the power to grant or deny, via a court order, a continuance or extension of a fixed court date. A court's power to issue orders is addressed, generally, in La. Const. Art. 5, § 2 ("A judge may issue writs of habeas corpus and all other needful writs, *orders*, and process in aid of the jurisdiction of his court....") (emphasis added), and specifically, with respect to continuances, in Code of Civil Procedure Articles 1601 to 1605. See La. C.C.P. art. 1601 ("A continuance may be granted in any case if there is good ground therefor."); La. C.C.P. art. 1602 ("A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the

6

continuance."); La. C.C.P. art. 1603 ("A motion for a continuance shall set forth the grounds upon which it is based, and if in writing shall comply with the provisions of Article 863."); La. C.C.P. art. 1604 ("When a party applies for a continuance on account of the absence of a material witness, the adverse party may require him to disclose on oath what facts he intends to prove by such witness, and if the adverse party admits that if the witness were present he would testify as stated in the affidavit, the court shall proceed to the trial of the case."), and La. C.C.P. art. 1605 ("***Every contested motion for a continuance shall be tried*** summarily and contradictorily with the opposite party.") (emphasis added).  See also La. C.C.P. art. 17 ("A court possesses inherently all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue such writs and orders as may be necessary or proper in aid of its jurisdiction."); La. C.C.P. art. 1631(A) ("The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done.").

The continuance at issue in this case was ordered by the district court pursuant to La. R.S. 13:4163, which currently provides (emphasis added):

### § 4163. Ex parte motion for legislative continuance or extension of time; legislators or employees engaged in legislative or constitutional convention activities

A. (1) A member of the legislature and a legislative employee ***shall have peremptory grounds for continuance*** or extension of a criminal case, civil case, or administrative proceeding as provided below.  The continuance or extension shall be sought by written motion specifically alleging these grounds.

(2) For purposes of this Section, "legislative employee" means the clerk of the House of Representative, the secretary of the Senate, and an employee of the House of Representatives, the Senate, or the Legislative Bureau, when such person is employed full-time during the legislative session or during any other time in which the continuance or extension is being sought.

B. The peremptory grounds for continuance or extension is available to and for the benefit of a member or legislative employee and may only be asserted or waived by a member or employee.

C. (1) Such peremptory grounds are available for the continuance

7

of any type of proceeding and the extension of any type of deadline pertaining to a criminal case, civil case, or administrative proceeding, if the presence, participation, or involvement of a member or employee is required in any capacity, including any pretrial or post-trial legal proceeding, during:

(a) Any time between thirty days prior to the original call to order and thirty days following the adjournment sine die of any session of the legislature.

(b) Any time between thirty days prior to convening and thirty days following adjournment sine die of any constitutional convention.

(c) Any time other than those provided in Subparagraph (a) or (b) of this Paragraph when such person is engaged in activities, including travel, in connection with or ordered by:

(i) the legislature;

(ii) any legislative committee or subcommittee appointed by the president of the Senate or the speaker of the House of Representatives;

(iii) any committee or commission appointed by the governor or other person authorized to make such appointments; or

(iv) any constitutional convention or commission.

(2) Such peremptory grounds are available to any member or employee enrolled as counsel of record when his participation is required. The availability of other counsel to assume the duties or responsibilities of counsel invoking the continuance or extension does not negate the peremptory nature of his motion.

D. (1) A motion for legislative continuance or extension filed by a legislative employee shall be accompanied by an affidavit, verifying such employment or service, executed by the presiding officer or the clerk or secretary of the respective house.

(2) A motion for legislative continuance or extension shall be filed at no cost to a member, employee, or a client of a member or employee.

E. (1)(a) If the grounds for a legislative continuance or extension are founded upon the convening of a regular legislative session or a constitutional convention, the motion for legislative continuance or extension shall be timely if filed no later than five calendar days prior to the hearing or proceeding to be continued.

(b) If the grounds for a legislative continuance or extension are founded upon any provision of Subparagraph (C)(1)(c) of this Section or upon the issuance of a call for an extraordinary session of the legislature, the motion for legislative continuance or extension shall be timely if filed no later than five calendar days prior to the hearing or proceeding to be continued or no later than two days following the issuance of the notice of the meeting or of the call for the extraordinary legislative session, which ever occurs last.

(c) The provisions of this Paragraph *shall not be applied so as to impede the peremptory nature* of this Section.

(2) Within seventy-two hours of the filing of a motion for a legislative continuance or extension, *the court or agency shall grant the continuance or extension ex parte* as follows:

(a) If the grounds for the motion are pursuant to Subparagraph (C)(1)(a) or (b) of this Section, the continuance or extension shall be granted for a period of not less than sixty days from the date of

adjournment sine die of the session of the legislature or of the constitutional convention.

(b) If the grounds for the motion are pursuant to Subparagraph (C)(1)(c) of this Section, the continuance or extension shall be granted for the day or days the member or employee is engaged in such activities.

F. (1) The provisions of this Section shall not apply to cases in the Supreme Court of Louisiana, criminal cases where the death penalty is sought, and administrative rulemaking authorized by R.S. 49:961.

(2) The provisions of this Section shall not apply to cases and proceedings wherein a member or employee is called as a witness, in which instances the provisions of R.S. 13:3667.1 and 3667.3 shall apply.

G. *Any action taken against a person, including any sanction imposed on an attorney*, who has filed a motion for legislative continuance or extension and *which results from the failure of such person or attorney to appear or comply with an order of the court* or agency or any deadline *shall be considered an absolute nullity* and shall be set aside by the court or agency upon the filing of a motion by the aggrieved person or attorney.

H. (1) Any person or attorney who has filed a motion for legislative continuance or extension which has been denied or which has not been granted within seventy-two hours of filing may apply directly to the Supreme Court of Louisiana for supervisory writs to review the action or inaction of the court or agency where the motion was filed.

(2) If a motion filed pursuant to Subsection G of this Section is denied, such denial shall be an appealable order.

I. (1) For sufficient cause shown, the court shall consider a motion for legislative continuance or extension at any time prior to the hearing or proceeding.

(2) The motion for a legislative continuance may be filed by electronic means such as facsimile transmission or electronic mail, or any other means authorized by law, provided that the mover shall provide all opposing counsel or parties with a copy of the motion, simultaneously with the transmission of the motion to the court.

The language of La. R.S. 13:4163 alleged to be most objectionable is found in Paragraph (E)(2) (added by 2008 La. Acts No. 865), stating: "Within seventy-two hours of the filing of a motion for a legislative continuance or extension, *the court* or agency *shall* *grant* the continuance or extension *ex parte* …." (Emphasis added.) "The word 'shall' is mandatory" (La. R.S. 1:3) and results in a requirement that a court, presented with such a motion, grant the motion without a hearing, even though opposition has been filed, which is contrary to La. C.C.P. art. 1605, requiring that "[e]very contested motion for a continuance shall be tried summarily and

contradictorily with the opposite party."

Only a few cases have touched on La. R.S. 13:4163 since the 2008 enactment of Paragraph (E)(2), and there is no indication that constitutional issues were raised in these cases.

Most recently, in **Michelli v. Dunn**, 23-1038, pp. 3-11 (La. App. 1 Cir. 9/3/24), ___ So.3d ___ (2024 WL 4023595 at *6), attorney Edmond D. Jordan (a member of the Louisiana Legislature as the elected House District 29 representative) represented the defendants in that residential construction encroachment dispute. Mr. Jordan filed several ex parte motions for continuance, pursuant to La. R.S. 13:4163, which were opposed by the plaintiffs (who contended the matter should be expedited given that one of the plaintiffs had a serious illness). This court reviewed one of the district court rulings, which had been denied, and issued the following action:

> Writ granted. The contempt hearing at issue herein was first scheduled on March 14, 2023 to be heard on March 23. On that date, the contempt hearing was reassigned to April 26, 2023. All of these dates fall within 30 days prior to the original call or within the legislative session itself. The continuance is therefore granted. The matter is remanded to the trial court to set a new date for the contempt hearing in accordance with La. R.S. 13:4163(E)(2)(a).

**Michelli v. Dunn**, 23-00584, p. 1 (La. 4/24/23), 359 So.3d 1268 (per curiam).

After further action in the district court, a subsequent La. R.S. 13:4163 motion to continue was denied, and the matter was heard on the merits, by the district court, in the absence of the presence of Mr. Edmonds and the defendants. **Michelli v. Dunn**, 23-1038 at pp. 5-6, ___ So.3d at ___ (2024 WL 4023595 at *3). The plaintiffs were granted the injunctive and declaratory relief requested, and they were awarded $57,703.88 in damages. **Id**. On review, the appellate court ruled that the district court erred in denying the defendants' ex parte motion for a legislative continuance, rendering the resultant judgment an absolute nullity. **Michelli v. Dunn**, 23-1038 at pp. 10-11, ___ So.3d at ___ (2024 WL 4023595 at *5-6).

10

In the case of **Ducote v. Magette**, 22-01649, p. 1 (La. 11/10/22), 349 So.3d 984, this court summarily ruled: "Writ granted. The trial court's denial of the legislative continuance is reversed. The continuance is granted and the matter is remanded to the trial court to reset the trial date within its discretion and in conformity with La. R.S. 13:4163." Three justices dissented, and along with a concurring justice, gave additional reasons.

Chief Justice Weimer dissented, stating:

> The court hearing in this matter is set for 9 a.m., and the legislative meeting is scheduled for 1:30 this afternoon. Because the court hearing should conclude this morning and given the proximity of the court house and the state capitol, under the unique facts, circumstances, and history of this case, I would deny the request for a continuance.

**Id.**

Justice Hughes dissented, stating:

> Respectfully, I would deny the writ. It appears applicant as Chairman set the committee meeting after the trial date was set. Putting aside issues of timeliness, such gamesmanship violates the oath of one privileged to practice law in this state, especially given the eight prior legislative continuances sought by applicant. Trial should be re-set immediately.

**Id.**

Justice Crichton concurred, stating:

> In light of the unusual and troublesome circumstances under which this case has presented itself, I agree with the majority that the trial court erred in denying the legislative continuance pursuant to La. R.S. 13:4163. However, I write separately to note that, in the future, this Court must examine La. R.S. 13:4163 in the context of its improper use to manipulate and gain an unfair advantage in litigation.

**Id.**

Justice Crain dissented, stating:

> The trial court denied what the opposition says is applicant's ninth request for a legislative continuance pursuant to Louisiana Revised Statute 13:4163. In an order signed on September 5, 2022, the trial court set this case for trial on November 10, 2022, beginning at 9:00 a.m. On October 13, 2022, applicant's counsel, who was co-chairing a legislative committee, scheduled a meeting of the committee for the trial date, November 10, 2022, beginning at 1:30 p.m. Counsel then waited until November 4, 2020, the Friday before the week of trial, at 10:49 p.m. to request a continuance. The 1:00 p.m. legislative

11

> meeting does not conflict with the 9:00 a.m. trial. The trial can be recessed, if not concluded, to accommodate the meeting. See La. R.S. 13:4163E(2)(b). Further, a lawyer-legislator is not relieved of his obligations under the Code of Professional Conduct. Rule 3.5D of the Code of Professional Conduct provides: "A lawyer shall not ... engage in conduct intended to disrupt a tribunal."

**Id.**

It is evident, though the constitutionality of La. R.S. 13:4163(E)(2)(b) was not an issue raised in the cases initially reviewing its application, that this statute presents the potential for the unfettered and extended delay of trial court proceedings.

It must be recognized that, due to the fact that courts are not empowered to enact laws, legislation passed *in aid of* the courts' inherent power is generally approved, but the courts will not sanction any legislation challenged on the basis that it has the effect of *divesting or stripping* the courts of their inherent power. See **Meunier v. Bernich**, 170 So. 567, 576 (La. App. Orl. Cir. 1936). Thus, the Legislature may enact statutes *in aid of* the courts' powers, subject to the courts' approval, but legislation *subverting* the courts' constitutional power violates the separation of powers doctrine set forth in La. Const. Art. 2, § 2. See **id**., 170 So. at 577.

The **Meunier** decision was cited with approval by this court in **Succession of Wallace**, 574 So.2d 348, 350 (La. 1991), and in **Singer Hutner Levine Seeman & Stuart**, 378 So.2d at 426, holding: "This court will ratify legislative acts that are useful or necessary to the exercise of its inherent judicial power, but it will strike down statutes which tend to impede or frustrate its authority." See also La. C.C.P. art. 191 ("A court possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law.").

In the instant case, one of the defendants, Steven Harter, Sr., whose defense had been assumed by the liability insurer's defense counsel (Alan Seabaugh (a state senator) and Michael Melerine (a state representative)), hired independent counsel

12

to urge that the numerous R.S. 13:4163 continuances, filed by these defense counsel/legislators, were delaying the conclusion of this lawsuit and were thereby damaging his own interests, as he believed a quick conclusion of the suit would limit his exposure to increased damages.[1]  Consequently, Mr. Harter, Sr., through his new defense counsel, submitted a brief in support of the plaintiff/applicant's position, herein, in which Mr. Harter, Sr., stated that he "recognize[d] that legislators who are attorneys should not be disadvantaged due to their decision to undertake public service. At the same time, the constitution does not permit legislators who are also attorneys unchecked authority to continue any deadline whatsoever for any reason simply by virtue of their status as a legislator especially when doing so may not be in the best interest of their own client."

If La. R.S. 13:4163 were to be found constitutional and were to continue to be applied to mandate an ex parte grant of a motion for continuance and/or for extension

---

[1] We note with interest 2024 Senate Bill Number 185, filed by Senators Seabaugh, Carter, Foil, and Jenkins, and Representative Larvadain, which sought to amend La. R.S. 13:4163 by, inter alia, amending Paragraph (D) to add a Paragraph (2)(b), which would have provided:

> If a party or attorney opposes a motion for continuance or extension of a deadline pursuant to this Section, upon motion of any party or upon its own motion, the court shall award attorney fees and court costs payable by the party or attorney who opposes such motion.

The result of such an amendment would appear to be that anyone who opposes a legislator or legislative employee's motion for an R.S. 13:4163 continuance or extension of time would be penalized monetarily, presumably ex parte, by the mandatory imposition of attorney fees and court costs.  Notwithstanding, on June 20, 2024, Governor Jeff Landry vetoed this bill, stating in pertinent part:

> Some legal proceedings warrant immediate relief, and judicial delay is not possible. Attorneys advocating for their clients in these unique cases should not have to do so under the threat of being sanctioned with attorney fees and court costs. Additionally, there is no oversight in Louisiana over legislative continuances. Attorney-legislators provide much-needed expertise to the Legislature, and therefore, I am not opposed to legislative continuances in general.  Nonetheless, an attorney-legislator can simply enroll as counsel of record or place his or her name on a pleading to qualify for a continuance or extension in any case.  By way of comparison, Texas allows legislative continuances, and the attorney seeking the continuance must file a copy of the continuance with the Texas Ethics Commission. Unless or until Louisiana provides similar oversight, the courts provide a check in the event a legislative continuance is simply not possible.

> For these reasons, Senate Bill 185 will not become law.  I trust you will understand and appreciate the rationale behind this decision.

of time, a legislator or legislative employee who merely files the appropriate motion form and states that the requisite grounds exist, will in every instance receive the mandated grant of such a motion, even if an opposition were to be filed alleging misuse of the process, and despite a court's obligation to try contested motions for continuance as set forth in La. C.C.P. art. 1605, supra ("summarily and contradictorily with the opposite party").[2] Such a mandatory directive to the courts also thwarts a court's similar obligation under La. C.C.P. art. 1631(A), supra, to conduct proceedings before it "in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done."

The jurisprudence has consistently held that, whether based on peremptory or discretionary grounds, a contested motion for continuance must be tried summarily and contradictorily with the opponent, as such is required by La. C.C.P. art. 1605. **Hughes v. Harvey**, 22-0131, pp. 3-4 (La. App. 1 Cir. 10/19/22), 354 So.3d 14, 16; **Landry v. Landry**, 21-0337, p. 7 (La. App. 1 Cir. 10/8/21), 331 So.3d 351, 356, writ denied, 22-00044 (La. 3/2/22), 333 So.3d 835; **Bradford v. J. Ray McDermott & Co.,** 347 So.2d 1218, 1220 (La. App. 1 Cir.), writ denied, 351 So.2d 155 (La. 1977). A trial court's failure to hold a statutorily-required contradictory hearing constitutes legal error. **Hughes**, 22-0131 at p. 4, 354 So.3d at 16 (citing **In re Elloie**, 05-1499, pp. 24-26 (La. 1/19/06), 921 So.2d 882, 898-900).

Denying a court the power to decide matters historically considered as falling exclusively within the bailiwick of the judicial branch subverts the power of the judiciary in violation of the separation of powers doctrine. Other state courts have reached similar conclusions.

The statute at issue in the out-of-state decision, **Granai v. Witters,**

---

[2] See also La. C.C.P. art. 1605, 1960 Official Revision Comment ("Although as a practical matter many continuances are granted ex parte by the court, the above article provides an opportunity for controverting the application.").

**Longmoore, Akley & Brown**, 123 Vt. 468, 469, 194 A.2d 391, 392 (1963),

provided:

> When a civil cause is pending in any court of the state in which cause a member or official of the general assembly is a party or an attorney of record, said cause shall not be heard or tried during the session of the general assembly unless this privilege is waived in writing by said party or said attorney.

In striking down the statute as unconstitutional, the Vermont court reasoned

(emphasis added):

> ***To grant a continuance of cases is a discretionary matter on the part of the courts*** of this state.  [The statute] deprives the courts of this judicial discretion to the extent therein referred to.  The General Assembly of Vermont was in session during the year 1961 nearly seven months, and the 1963 session about six.  It becomes apparent that if this statute is to be regarded as a lawful exercise of legislative power, the courts would be powerless to act in this or in any other category which the legislature might deem proper to protect or grant a special privilege.
>
> ***It is the function of courts to maintain constitutional government.*** Chapter I, Article 4th of the Vermont Constitution provides that a remedy at law is secured to all by stating that, "Every person within this state ought to find a certain remedy, … completely and without any denial;…."  There are no peculiar rules or exemptions for a particular occupation. The effect of the statute under consideration is to grant to a member or official of the legislature, if a party or an attorney of record, a privilege or indulgence in our courts which no other person has or enjoys.  ***For all practical purposes it can hardly be assumed that any court of this state would require the attendance in court of a member or official of the legislature under circumstances when their duties in the legislature were more compelling.***
>
> To forestall and prevent the trial of cases by invoking the statute might result in unjustifiable delay in the disposition of cases so affected, and possible hardship to parties seeking redress in our courts.  ***By its enactment the legislature intruded itself into the internal administration reserved unto the judiciary thereby depriving the courts of authority to decide when cases governed by the statute may be called for trial.*** Quoting from 11 Am.Jur.Constitutional Law, § 206, "Any legislation that hampers judicial action or interferes with the discharge of judicial functions is unconstitutional." …
>
> The act thus infringes upon the normal judicial processes delegated to the judiciary, and guaranteed to litigants under the Vermont Constitution.  By its enactment the legislative branch of the state government usurped the constitutional power of the judiciary. ***This statute thwarts the constitutional mandate to the judiciary requiring that justice be administered promptly and without unnecessary delay.*** It runs counter to the constitutional safeguards and commands of the Vermont constitutional provisions referred to in this opinion. This is conclusive against its validity, and we so hold.

**Granai**, 123 Vt. at 470-71, 194 A.2d at 392-93.

See also **Degraw v. The Eighth Jud. Dist. Ct. of the State of Nevada in & for Cnty. of Clark**, 134 Nev. 330, 333-34, 419 P.3d 136, 139 (2018) (wherein the court recognized that, when a statute is unconstitutional as containing mandatory legislative continuances of fixed court dates with no exceptions, courts will not interpret the statute as including implied exceptions when such exceptions do not currently exist in the statute, as such an approach reaches beyond statutory interpretation and results in policy making; rewriting a statute is the prerogative of the legislature, not the court); **Verio Healthcare, Inc. v. Superior Ct.**, 3 Cal.App.5th 1315, 1319, 208 Cal.Rptr.3d 436, 439 (2016) (wherein statutes providing for mandatory continuance or extension of time were declared unconstitutional); **State of Wisconsin v. Chvala**, 268 Wis.2d 451, 455-64, 673 N.W.2d 401, 403-07 (2003) (wherein a statute mandating continuance of a fixed date in a lawsuit, on motion of a legislator, was held violative of the separation of powers doctrine, and with the court stating: "Courts have the inherent authority to ensure that … the court functions efficiently and effectively to provide the fair administration of justice. … A court's authority to grant or deny continuances and adjournments is critical to ensuring that it functions efficiently and fairly. … [A] court has no discretion whether to deny a continuance or adjournment no matter how compelling the need for the case to proceed immediately and no matter what means of accommodation are available to minimize or avoid interference with legislative duties. This is a direct and significant interference with the judiciary's ability to exercise its inherent authority to decide, on the specific facts before it, whether the interests of efficiency and fairness will or will not be best served by a continuance or adjournment."); **Williams v. Bordon's, Inc.**, 274 S.C. 275, 280, 262 S.E.2d 881, 884 (1980) ("The Legislature therefore cannot assume to itself the exercise of judicial powers. … The authority to determine whether a continuance should be

granted or denied is inherent in the exercise of this judicial power, and cannot be exercised by the legislative branch of the government. Therefore, [the statute], in so far as it attempts to exercise the ultimate authority to determine when, and under what circumstances, lawyer-legislators may be exempt from court appearances, is unconstitutional as violative of the principle of separation of powers."); **Lemoine v. Martineau**, 115 R.I. 233, 238-39, 342 A.2d 616, 620 (1975) (wherein statute mandating continuance when legislator was involved in lawsuit was deemed "blatantly unconstitutional" as the "power of decision" rested with the legislator and the courts were given "no discretion to act"); **City of Valdez v. Valdez Development Co.**, 506 P.2d 1279, 1284 (Alaska 1973) (wherein the statute authorizing an automatic continuance in suits in which legislative members are participating was held unconstitutional); **A.B.C. Business Forms, Inc. v. Spaet**, 201 So.2d 890, 892 (Fla. 1967) ("[N]either of the three co-ordinate branches of government should encroach upon the powers and duties of the other and the courts should support the legislative attempt to assure the presence of its membership unless the legislative enactment is a clear invasion of the judicial field"); **Booze v. Dist. Court of Lincoln Cnty.**, 365 P.2d 589, 592 (Okla. Crim. App. 1961) ("[I]n so far as [the statute] attempts to deprive the courts of the power to determine whether a continuance be granted or denied, [it] is an attempt by the legislature to destroy the principle of separation of powers, [and] is an encroachment upon the powers of the courts of this state and thus violates Article IV section I of the Oklahoma Constitution."); **McConnell v. State**, 227 Ark. 988, 990-94, 302 S.W.2d 805, 807-09 (1957) ("It must of course be conceded that the legislative branch of the government does not have unlimited authority over the judiciary, for the constitutional separation of powers would then be a mere fiction. … [T]he General Assembly cannot assume the exclusive power of determining whether a continuance should be granted in a judicial proceeding."); **Kyger v. Koerper**, 355 Mo. 772, 777-

78, 207 S.W.2d 46, 49 (1946) (en banc) ("We have held that an act which arbitrarily imposes an unreasonable or unnecessary delay upon the administration of justice would be contrary to [the state constitution] … [T]he Legislature cannot entirely exclude the exercise of the discretion of the Court. To do so is an encroachment of one department of Government upon the functions of another, prohibited by [the state constitution]. … Certainly litigants and lawyers who are members of the General Assembly should be given every reasonable consideration and their rights carefully protected by the Courts. … However, our constitution requires the courts to protect the rights of all parties (especially to see that 'justice shall be administered without … denial or delay'); and there can be abuse of this continuance statute (although such instances are very rare) if it is construed to compel an indefinite continuance in every case under all circumstances."); **Johnson v. Theodoron**, 324 Ill. 543, 547-48, 155 N.E. 481, 483 (1927) ("The Legislature does not have the power to declare what shall be conclusive evidence of a fact … nor can it say that a court is bound to act in accordance with the opinion of a party to a suit, or of his attorney, expressed in the form of an affidavit. It is not within the power of the Legislature to exclude from the courts that which proves the truth of the case nor to compel them to receive that which is false in character. It cannot direct what orders shall be entered by the court in pending actions. It may enact statutes which affect pending actions, but the application of the statute to a particular case is a judicial function, and the determination of what order shall be entered in such a case is the exercise of judicial power which does not belong to the Legislature."); **Riglander v. Star Co.**, 90 N.Y.S. 772, 774-78 (App. Div. 1904), aff'd sub nom. **Riglander v. Morning J. Ass'n**, 181 N.Y. 531 (1905) (wherein a peremptory statute was struck down as unconstitutional as it deprived the courts of any authority to decide the propriety of maintaining or continuing a court date, holding that in enacting a peremptory continuance statute favoring legislators, the legislature "intended to deprive the

18

courts of all discretion" and "thus depriv[ed] the courts of the right to exercise that judicial discretion which has always been their prerogative"; the court further stated that the "courts are not the puppets of the Legislature," rather "[t]hey are an independent branch of the government, as necessary and powerful in their sphere as either of the other great divisions.").

## CONCLUSION

After considering the law and arguments, we conclude that the provisions of La. R.S. 13:4163 bypass constitutional and statutory powers vested in the judiciary and, in enacting this statute, the Legislature particularly usurps the discretion residing in the judiciary to grant or deny motions for continuance and extensions of fixed court dates, when legislators or legislative employees are concerned in the matter.[3]

In general, when an action has been pending for several years (in the instant case six years have passed since suit was filed), further delay is contrary to the interests of justice, and trial courts have great discretion in granting or denying

---

[3] Among the amicus briefs submitted in this matter are briefs filed by both the Louisiana Attorney General and the "Members" of the Louisiana Legislature, in which these parties contend, inter alia, that, as no La. R.S. 13:4163 legislative continuance has been asserted relative to the October 21, 2024 district court date scheduled, there is no justiciable controversy currently before this court relative to the statute. However, the plaintiff responds to this argument, asserting that defense counsel did in fact seek a continuance of the October 21, 2024 trial date, but later withdrew their motion to continue in a February 15, 2024 motion hearing. The plaintiff asserts that the election of defense counsel to the 2024-2028 legislative terms and their repeated invocation of La. R.S. 13:4163 to continue fixed court dates (including: the hearing testing the constitutionality of La. R.S. 13:4163; to extend their expert deadlines; to extend all deadlines between February 14, 2022 and July 18, 2022; to continue a hearing on motions in limine; to continue a video trial deposition; and to move the trial date) demonstrate the opportunity and likelihood of a recurrence. Although a court is not required to decide moot questions or abstract propositions, or to declare for the governance of future cases principles or rules of law that cannot affect the result as to the thing in issue, there are exceptions to the mootness doctrine. **City of Baton Rouge/Parish of East Baton Rouge v. Myers**, 13-2011, pp. 19-20 (La. 5/7/14), 145 So.3d 320, 337; **Cat's Meow, Inc. v. City of New Orleans Through Department of Finance**, 98-0601, pp. 9-10 (La. 10/20/98), 720 So.2d 1186, 1194. In particular, and as applicable to the instant case, a court should consider whether there is any reasonable expectation that the complained-of conduct will recur. See **id**. A finding of mootness is precluded when: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again. **In re Grand Jury**, 98-2277, p. 11 (La. 4/13/99), 737 So.2d 1, 11. Therefore, since actions complained of herein by the plaintiff have been demonstrated to be likely to recur, we do not find the constitutional issue raised by the plaintiff to be subject to the mootness doctrine.

motions for continuance, which are reversable only when there has been an abuse of that discretion. See **Kingfish Asset Mgmt., LLC. v. Bultman**, 23-01260, p. 1 (La. 9/15/23), 370 So.3d 441 (per curiam). In exercising discretion as to whether to grant or deny a motion for continuance, a trial judge looks to the facts of each case and considers factors related to: the actions of the parties, such as diligence, good faith, and reasonable grounds; the possibility of injustice, unfairness, and inequity that might result from a premature trial; and the effect that a continuance might have on the administration of justice, including congested court dockets and the judicial goal of having cases resolved within a reasonable time. See **Sparacello v. Andrews**, 501 So.2d 269, 273-74 (La. App. 1 Cir. 1986), writ denied, 502 So.2d 103 (La. 1987). The Legislature, in enacting La. R.S. 13:4163, unilaterally resolves all of these factors in its own favor, casting aside any concerns of the other parties; and in so doing, the Legislature conveniently overlooks the fact that this type of adjudicative action falls solely within the purview of the courts to decide whose allegations prevail in the context of a lawsuit. This is particularly concerning where, as in this case, both the plaintiff and one defendant have made claims that the legislators have misused R.S. 13:4163 to delay the proceedings; under such circumstances, when a La. R.S. 13:4163 motion to continue has been opposed, La. C.C.P. art. 1605 should be applied to require a contradictory hearing before the court.

Therefore, we conclude that La. R.S. 13:4163 does not *aid in* the exercise of the power of the courts, but rather *subverts* the courts' constitutional and statutory powers, as the Legislature has usurped the courts' power to decide when fixed court dates may be continued or extended; thereby violating the separation of powers doctrine set forth in La. Const. Art. 2, § 2.

Accordingly, the district court in this case erred when it denied the plaintiff's motion for judgment declaring La. R.S. 13:4163 to be unconstitutional on its face. Having decided the matter on this basis, we find it unnecessary to address the parties'

20

remaining arguments.

## DECREE

For the reasons stated, we reverse the district court's denial of the plaintiff's motion for declaratory judgment, we declare La. R.S. 13:4163 unconstitutional on its face, and we remand the matter to the district court with instructions to conduct a contradictory hearing in accordance with La. C.C.P. art. 1605, as to all contested motions for continuance.

**REVERSED; REMANDED WITH INSTRUCTIONS.**

# SUPREME COURT OF LOUISIANA

### No. 2024-CD-00359

### THERESA FISHER

### VERSUS

### STEVEN HARTER, JR., ET AL.

*On Supervisory Writ to the 1ˢᵗ Judicial District Court, Parish of Caddo*

**WEIMER, C.J.**, additionally concurring.

I additionally concur in the majority's conclusion–which is consistent with cases nationwide–that the language in the legislative continuance statute, La. R.S. 13:4163, that eliminates all discretion on the part of the judiciary with respect to the filing of a motion for legislative continuance is unconstitutional on its face. The statute intrudes on the inherent powers of the judiciary to administer the business of the courts and determine when cases may be called for trial, in violation of La. Const. art. 2, § 2.

I write separately to summarize what is problematic with the statute: the mandatory, *ex parte* aspects that remove any discretion on the part of the judiciary in granting legislative continuances, even in the face of opposition and even when the continuances are being used in such a manner as to gain an unfair advantage and/or interfere with the orderly and fair administration of justice.[1] As the majority opinion correctly notes, "the Legislature may enact statutes *in aid* of the courts' powers, subject to the courts' approval, but legislation *subverting* the courts' constitutional power violates the separation of powers doctrine ...." **Fisher v. Harter**, 24-00359,

---

[1] Ultimately, the issue of legislative continuances involves all three branches of government. The Governor recently vetoed a legislative continuance statute passed by the legislature. Following the Governor's issuance of balanced reasons for the veto (quoted in the majority opinion) no effort was made by the legislature to override that veto.

slip op. at 12 (La. __/__/24). Thus, a statutory legislative continuance that is balanced and respects the constitutional authority, responsibilities, and limitations of each branch of government may well pass constitutional muster. The statute at issue in this case does not.

The role of the judiciary is to resolve specific cases presented to us faithfully and impartially, according to the law and constitution. To assist us in the fulfillment of that role:

> The separation of powers by our State Constitution "establishes an inherent judicial power which the legislative and executive branches cannot abridge." **Singer Hutner Levine Seeman & Stuart, etc. v. Louisiana State Bar**, 378 So.2d 423 (La. 1979).
>
> The inherent powers doctrine necessarily is limited in several respects. Since it is based on the separation of powers, which includes the concepts of checks and balances and functional differentiation, it serves primarily to shield the courts' ability to judge independently and fairly from improper interference due to the actions or inactions of executive or legislative officials .... [A] court's inherent judicial power includes a measure of administrative authority not unlike that primarily and exclusively vested in the executive department, but only so much as is reasonably necessary to its own judicial function. [Internal citation omitted.]

**In re Courthouse Security**, 52,787, pp. 3-4 (La.App. 2 Cir. 8/14/19), 278 So.3d 1061, 1063-64 (quoting **Imbornone v. Early**, 401 So.2d 953, 958 (La. 1981)). In other words, under the doctrine of inherent powers, "courts have the power (other than those powers expressly enumerated in the constitution and the statutes) to do all things reasonably necessary for the exercise of their functions as courts." **Konrad v. Jefferson Parish Council**, 520 So.2d 393, 397 (La. 1988). As we explained in **Konrad**, "[t]he doctrine is a corollary of the concepts of separation of powers and of judicial independence, in that other branches of government cannot, by denying resources or authority to the court, prevent the courts from carrying out their constitutional responsibilities as an independent branch of government. The inherent

2

power of the judiciary is a necessary concomitant to the judicial power, but pertains to the administration of the business of the court." *Id.* (internal citations omitted).

Legislation such as that before us, addressing a legislative continuance, must strive to maintain the separation of powers by not encroaching on the inherent powers of the judiciary to administer the business of the courts. It must respect the independence and integrity integral to a properly functioning judiciary. That being said, the challenges faced by legislators who are also attorneys are not lost on us; neither are the contributions of attorneys to the judicial system and our system of government. History reflects the pivotal role played by attorneys in the founding of our nation. A disproportionate number of the individuals who signed the Declaration of Independence, the Articles of Confederation, and the United States Constitution were attorneys.[2] The contribution to the founding of our nation by attorneys Alexander Hamilton, author of **The Federalist Papers**, along with John Jay and James Madison, who is also regarded as the Father of the Constitution, and Thomas Jefferson, the pen of the American Revolution cannot be overstated.[3]

Given the invaluable contributions of attorneys to our system of government, the court must seek an accommodation, but one which strikes a collegial and rational balance between the respective branches of government, rooted in comity, or the mutual respect for the separate branches of government. In pursuit of that goal, the Louisiana Judicial College sponsored a robust discussion between legislators and judges last year that it hoped would resolve the issue of legislative continuances such

---

[2] Summary research discloses that of the 56 signers of the Declaration of Independence, 25 were attorneys. Of the 48 signers of the Articles of Confederation, 22 were attorneys, and 22 of the 39 signers of the U.S. Constitution were attorneys.

[3] Legislators who appear as attorneys before the court are neither favored nor disfavored because judges act impartially, as umpires, without any interest in the ultimate outcome and without manipulating the strike zone.

that the orderly administration of our courts and the legislator-attorneys, who donate their time and talent and who are grossly underpaid for doing so, could easily co-exist. These efforts must be continued and an appropriate resolution reached so that legislator-attorneys and attorneys who are not serving in the legislature do not find themselves battling each other over when cases will be heard by a court of justice. I quote the brief of the Attorney General, who states in the conclusion of the amicus brief filed in this matter: "The importance of striking a balance in this regard is challenging, but necessary .... The concept of comity counsels that the members of the judicial branch and the legislative branch respect the role each has in our system of democracy and work together, whenever possible, without yielding judicial or legislative independence, to serve the public." See, Amicus Brief of Attorney General, quoting **Ducote v. Magette**, 22-00996, pp. 2-3 (La. 6/29/22), 341 So.3d 535, 536 (Weimer, C.J., concurring).

Although the district court indicated, and it has been argued, that the legislative continuance granted by La. R.S. 13:4163 is justified because it is "temporary," there are no limitations imposed on the number of continuances that can be demanded under the statute. As this court pointed out over a century ago, "[i]f, under such circumstances, defendant can obtain [a] continuance, litigation would be endless." **Vaiden v. Abney**, 7 La. Ann. 575 (1852). It is the particular province of the court, through the exercise of its inherent powers, to ensure the orderly administration of the courts and our system of justice.

4

# SUPREME COURT OF LOUISIANA

## No. 2024-CD-00359

## THERESA FISHER

## VS.

## STEVEN HARTER, JR., ET AL.

On Supervisory Writ to the 1st Judicial District Court, Parish of Caddo

**McCALLUM, J., dissents and assigns reasons.[1]**

Legislative continuances, as provided in La. R.S. 13:4163, can be abused and when that happens, the courts, especially this Court, should act. The current case needs to be hastened to trial; no one can dispute that. This writer diverges from the majority because of the specific remedy they have confected. The majority has removed an unattractive wart by using a chainsaw when a scalpel would have remedied the current litigants' problems and inflicted no collateral damage to our codal system of law.

The Legislature has enacted entire systems of laws that limit and proscribe the actions of judges and parties in our courts. These include provisions of the Code of Civil Procedure, Code of Criminal Procedure, and certain Revised Statues. One noteworthy example is the law related to the recusal of judges. Nothing goes more to the heart of the inherent duties of a judge than the decision of whether an individual judge should recuse himself or herself from presiding over a particular case. Louisiana Code of Civil Procedural Articles 151-159 and Louisiana Code of Criminal Procedure Articles 671-679 address that very issue, providing for non-discretionary grounds for recusal, as well as discretionary ones. The people, through their legislature, have addressed whether a particular judge may exercise any judicial

---

[1] The author served for eleven years in the Louisiana House of Representatives and never invoked a legislative continuance in his legal practice.

functions over a case in those articles. Nothing could be more intrusive into the inherent role of a judge than these articles, and yet, for more than a century no one has challenged the ability of the legislature to act on behalf of the people in this essential area. Judicial integrity demands rules that prevent abuses that would result if no such legislative guidelines were in place. The majority, in its opinion, has now called into question the ability of the people of this state to make these and other decisions that have been historically within their power.

We should avoid declaring expressions of the will of the people unconstitutional when, as here, there are other remedies, and when we must declare something unconstitutional, we should do so in the narrowest way. Under the broad reasoning of the majority's opinion, this Court could find unconstitutional La. R.S. 13:4162 because it inconveniences a court's ability to order its own docket.[2] It could likewise find unconstitutional La. C.C.P. art. 1602 because the provision lacks court discretion by including the term "shall" instead of "may."[3] These examples are merely illustrative and not exhaustive of the many and various statutory provisions this Court places at risk of being found unconstitutional.

Furthermore, the decision of the Court could possibly lead to a future constitutional crisis. The Constitution makes compulsory the attendance of those elected by the people of this state to represent their interests at legislative sessions. "The legislature shall meet annually in regular session . . . ." La. Const. Art. 3 § 2

---

[2] Titled, "Suits entitled to preference; right of office; state, police jury or municipal corporation as party," La. R.S. 13:4162 provides:

> Suits in which the right of office is involved, or in which the state, a police jury or municipal corporation is a party, shall have precedence over all others except criminal cases, and they shall take precedence in the order in which they are named.

[3] Titled, "Peremptory grounds," La. C.C.P. art. 1602 provides:

> A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance.

2

(A)(1). Likewise, the legislative body may "compel the attendance of absent members." La. Const. Art. 3 § 10 (A). These powers are separate and solely reserved to the Legislature.

Ultimately, the majority paints with too broad a stroke. This issue is one that occurs rarely. This Court has other, less destructive ways to remedy the situation in this case and others like it. Accordingly, this Court should limit its decision to a result that enables this specific matter to reach a speedy disposition without broadly finding the legislative continuance statute unconstitutional. Additionally, this matter had all but become moot by the mutual agreement of all parties to set a trial date in October of this year. In fact, this Court's decision to grant certiorari, docket the matter, and issue an opinion further delayed the matter from proceeding to trial as agreed upon by the parties.